We'll hear argument now in the case of Prime Insurance v. Wright. Ms. Murphy. Good morning, Your Honor, and may it please the Court. I and my partner, Vince Tomkowitz, who's getting seated now, represent Prime Insurance Company. We're here today on appeal from a summary judgment relating to an MCS 90 surety provision in a prime insurance policy that indisputably does not cover the underlying accident at issue in this case. It did not cover the vehicle at issue in this case. The first and central issue thus presented is what must be proved by a claimant right for the surety of the MCS 90 to apply to his otherwise uncovered judgment. It is our intent to focus argument today on the proper interpretation of an MCS 90 as a matter of federal law, though Prime also has submitted two other arguments as to which, unless the Court has questions, we'll stand on the briefs. Ms. Murphy, let me tell you what my problem is after having read the party's briefs. The endorsement talks about negligence related to da, da, da, da, da, use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980. Yes, Your Honor. What I found striking is that those sections don't appear to be quoted or discussed anywhere in either party's brief. The briefs go on at length about public policy and legislative history and regulations, but the endorsement itself asks whether vehicles are subject to the financial responsibility requirements of two named statutes. And I would really appreciate it if counsel for both sides would discuss the language of those statutes. Yes, Your Honor. So the pertinent language is found at 49 USC 31139 B1 and B1A. That used to be called the Motor Carrier Act referenced in the MCS 90. It reads in relevant part, and here I'm quoting in part B1 and part B1A, the Secretary of Transportation shall prescribe regulations to require minimum levels of financial responsibility covering public liability for the transportation of property by a motor carrier in the United States between a place in a state and a place in another state. The same statute also references the carriage of property between a place in a state through another state back to that state. And there's a separate section of the statute for transportation of hazardous matter, which you'll find- So on one trip, can a truck drift in and out of that language? Yeah, I take it that you're right as best I can figure out that Section 30 ended up as Section 31,139B. Now that's real inflation for you. How does a truck on an interstate trip drift in and out of that language? Well, the truck itself has to be engaged in the carriage of property or people. I omitted people. Which includes preparing for that carriage. That section, what is it, 13,102B23? But the preparation itself cannot meet the qualifications of the statute unless property is taken from a place in one state- Why not? To a place in another? Because of the plain language of the statute, Your Honor. The plain language of the statute? Yes, Your Honor. Seems to me that the plain language of the statute favors coverage here. Given the definition of interstate commerce in, let's just call it B23 and omit the thousands. Given the definition of interstate transportation, somebody who is going from one place where he's dropped off a load to another to pick up a load to carry an interstate commerce is definitionally in interstate commerce. Your Honor, I think Congress could have written a statute that extended the regulations to all situations in which a motor carrier is engaged in interstate commerce, but it did not. It has a pretty broad definition in 23B and I guess what I've been trying to struggle with in addition to the statutory language question here, Ms. Murphy, is why Congress might have wanted this coverage to kind of blink off and on during, let's say, a driver's week-long trip among different states picking up different loads. I think Congress recognized that we are in a federal system and when the transportation of property is from, not to pick a random example, Indiana to Indiana, I think Congress's intent for normal property was to leave the regulation of financial responsibility for the carriage of that property with the state of Indiana. What Congress did that's distinct and that I think informs us as to the fact that they had a nuanced intent was if you go to Section D of the same statute, 31,139D, you find that there's a very different set of rules if you're carrying hazardous waste. If you're carrying hazardous waste, there's nothing in the statute that says we're going to limit the requirement that there be this surety provision, it's not coverage, this surety provision to situations where the waste is being carried from a point in one state to a point in another. Rather, Congress explicitly said we're going to require $5 million, we don't care where you're going with this stuff, it's too hazardous, and then they made an exception. And the exception allows the secretary working with state governors or territorial governors to reduce the required limits for interstate carriage of hazardous waste in circumstances such as where it's just difficult to get $5 million worth of coverage. Congress would not have had to make that exception, would not have had to say we're treating hazardous waste differently and treating hazardous waste intrastate. If it were not their considered intent to require that an MCS 90 surety be available only as to carriage of goods from a point in one state to a point in another. Congress also could have just as easily said we're going to extend the MCS 90 surety to situations in which dispatch in one state impacts intrastate carriage of goods in another. It did not choose that language either. So I think that what we're here to talk about, Your Honor, is that the regulations are based on statutory authority. The other place I think this court should look to to understand the statutory authority is found at 49 USC 13501. And here I'm going to read part of subpart one and subpart two, Your Honors. It starts with the secretary and the board have jurisdiction, and that language is important, over transportation by motor carrier to the extent that property is transported by motor carrier between a place in a state and a place in another state. Then goes on to say and on a public highway or on property solely that of the federal government. In the decision below, the court recognized that there is on this evidence that the accident happened when Mr. Humphrey was driving without a load. He was not actually then carrying property. In order for us to consider what he was doing part of carriage of property, and I don't think this is a necessary result of either the statutory language or the case law. You have to say, well, he's on his way to pick up property. Ms. Murphy, you keep mentioning the word transportation, but I didn't see anywhere in your briefs where you deal with the statutory definition of transportation. And that's where I'm hung up. Because it's very clear. I hear what you're saying. It's very clear to me. I can read the board. The term transportation includes services related to that movement, including arranging for receipt, delivery, et cetera. Do you have anything to say about that? I didn't see that anywhere in your briefs, and even in the gray brief, I didn't see it. After the red brief made a big deal out of that. Well, Your Honor, I think, and I'm sorry if I didn't say this as clearly as perhaps I should. I think the important component is that the word transportation can have a broader meaning, but it has to be brought home to the language of both the jurisdictional provision, which I just read to Your Honors, and to the language of the provision requiring financial security. The language of the provision requiring financial security says transportation of property between a place in the state and a place in another state. Right, and so does the word. It does not say arranging that transportation. I'm sorry. But I'm sorry, but doesn't, it uses the word, we see this all the time in statutes, and this is where I'm confused on this. The word transportation is used in the statute, and then a different part of the statute defines the word transportation. Yes, Your Honor. What's wrong with that? Nothing's wrong with that. However, in this case, you have to have not just interstate transportation. You must have, under the regulatory language that Congress chose, transportation of property between a place in a state and a place in another state. So we shouldn't use the definition of transportation because after transportation, there's this clause of property. So we're just left to determine what transportation means on our own, and we should just ignore the statutory definition because the statute doesn't say transportation of property. No, Your Honor. Because the statute does say transportation of property, a critical component of Congress's language requires that the particular transportation subject to the surety under the M.C.S. 90 has to be movement of property between a point in one state and a point in another state. See, you're describing transportation as movement, but that's not what the statute says is the definition of transportation. It could say the term transportation means movement. It doesn't say that. Because transportation has broader meanings in other contexts. If I use a word in a broader context and then use words in the actual statute that matters that narrow it down to the transportation of property between a place in a state and a place in another state, then I think that language compels the court to ask, was there transportation of property between a place in a state and a place in another state? But it also applies to services related to. And I don't know a trucking company that doesn't have occasional bobtail and deadhead runs. Do you? I do not. And the fact is that Congress clearly did not intend the M.C.S. 90 to apply to all accidents anywhere in the country involving any motor carrier. Had that been their desire, they could have written a much simpler statute. No, it would have to be in interstate commerce within the meaning of 23B, which is pretty broad. Let me tell you another problem that I had when I read these briefs. Last year, the Supreme Court had a case dealing with the Interstate Transportation Exception to the Federal Arbitration Act. And there was a debate about whether loading stuff onto an airplane came within that exception when the loader never, ever moved from one state to another. The Supreme Court held, yes, that's part of interstate commerce and therefore qualifies for the exemption. The kind of argument you seem to be making sounded a lot like the stripe of argument that lost in the Supreme Court in the air transportation case. And I wonder why we should accept it here when the Supreme Court didn't in the airline case. I think because in the airline case, the question was not whether the particular language of a statute that enabled assurity provision. That's right. It didn't have anything to do with Section 30 of the Motor Carrier Act of 1980, no matter what it is today. I grant that. And I think if you and I know this other case that I also referenced in the briefs has nothing to do with the M.C.S. 90. But I think the Collins decision from the Seventh Circuit recognizes that if you're asking about whether movement of property is interstate in nature or not, you have to look at the actual carriage. So most of the case law talks about intent of the shipper. We have no evidence that this shipper intended an interstate movement of the goods that Mr. Humphrey was on his way to pick up. What we do have is Mr. Humphrey testifying that he could very easily have been sent out to do a series of interstate deliveries in Indiana. He could have been, but he was expecting to go back to Chicago. If the shipper of that load had intended him to drop it in Chicago, does that settle the case? No, Your Honor. Okay, so why are you? I think that I would still be arguing that he was unladen at the time of the accident. However, because there is no evidence that he was being instructed by the shipper to go back to Chicago, and his testimony is that he had to tape his vehicle together, and that's why he went back to his base. He says he doesn't remember where the load was destined. Because of that, I think we don't need to reach the question of whether an unladen vehicle in and of itself cannot ever be under the MCS 90. I think the question we need to reach today is on a case like this where the burden of proof is on the claimant for coverage, and they cannot show that Mr. Humphrey was engaged in the transportation of property from a point in one state to a point in another, even broadly allowing empty runs to count, that summary judgment in this case was improperly granted and the case should be remanded. I see I have run out of time, and I thank you, Your Honors. Thank you, Ms. Murphy. Mr. Singleton. Thank you, Your Honor. May it please the Court. The first thing I want to bring up, when we first referenced section 31-139, 31,139, Ms. Murphy quoted a portion of that. Let's just call it 39. Fair enough. So 39. Ms. Murphy quoted a portion of that, and I think this gets to the heart of what this whole argument has been about. There was an omission of part of the statute that specifically says you have to look at the definitions in 13-102, we'll say 02. That parenthesis, as such terms are defined in section 13-102, and that's kind of been the theme of all of the briefing on this case, is that Prime is refusing to acknowledge those definitions. If you limit having a load, if you limit the MCS 90 to only apply where there is a box on a truck, then 23B, the definition of transportation, disappears. A service related to movement of property, including arranging for, you've got to arrange it before you deliver, before you pick it up. That is a predicate. So you can't really say that, well, the box has to hit the truck, or the truck has to be in the yard waiting to get the box. The other major factor here in all of these arguments raised by Prime is there's a complete assumption that it's a purely intrastate trip. While Ms. Murphy is citing to portions of the right-way trucking's driver, Mr. Humphrey, I think the district court, Judge Lee, succinctly summarized those, where it's really them trying to cherry-pick certain comments that are made by Mr. Humphrey during his deposition while ignoring the totality, where he repeatedly stated the load was intended to get him back to Chicago. He used the term intended, but he knew he was going back to Chicago either way. And Judge Lee kind of did phrase that as cherry-picking that. And it's an argument that, well, he may have been intended, and I think that's a phrase specifically used in Prime's initial brief, may have been intended, could have been intended to stay in Indiana. That's argument, that's not evidence. The evidence has that Mr. Humphrey testified he was going back to Chicago. If Mr. Humphrey was on the road, let's say, for a week carrying different loads among different states, why isn't his whole trip covered? Arguably, I would say it is because when you're looking at a trip, trying to narrow it down just to one leg of the trip, I don't understand the reason. Right, and that's what I think somewhere there's a little bit of a blending. We talk about trip-specific fixed intent as standards, different circuits have applied. Frankly, I think those blend quite a bit because even in some of the trip-specific cases, you talk about the intent of shipment and things like that. While the trip-specific goes directly to, okay, we're looking at what was occurring what trip at the time, they don't really talk about, well, is the trip the second the load hits the bed and then when it's dropped off? Is it when you're heading to pick up the load and then eventually when it's dropped off? Is it when you're starting your one-week trip to multiple destinations? There's no good definition of that that I've seen in these cases, Your Honor. But as far as what Congress, the whole purpose of the MTS 90, this Court has previously stated, is it's to protect the injured public. That's the public policy issue here. That's the reason this has been enacted. And it seems very odd to me that you would say that, well, Congress was interested in protecting people only from laden semi-trucks but not from, say, an empty semi-truck with trailer weighing anywhere from 20,000 to 35,000 pounds. We don't care about if people are hurt by those. We only care about if there's a box in the truck. So that's where I think looking at a more broad trip approach, even under trip-specific or intent, is very important. So here you do have a situation. Mr. Humphrey was on his way to pick up a load, going to take that to Chicago. A Chicago company, pardon me, an Illinois company. I forget if they were specifically based out of Chicago. But an Illinois company was contacted by the shipper in order to pick up a load in Indiana. I don't know how much more interstate you can get there, interstate commerce you really can get there. Is it enough just that the dispatcher was in another state? Well, it certainly would be the coordination load, and that's where I'm kind of talking about services related to, including arranging for a receipt. The dispatch is the arrangement. I don't know how you can say, well, dispatch isn't included. Right, but if you're simply having – this goes, I think, to that Maryland case that you all talked about, but where you've got to vary the facts a little bit. The truck is already in Indiana. A dispatcher in Illinois says, take this load from Fort Wayne to Lafayette. Is that enough? So I think it would be, Your Honor. I think it would be. So the Titan case that you're referencing out of the District of Maryland, it's the closest case I can find. If someone's found another, I'd love to see it, but it's the closest case I can find to the facts that have been applied here. And frankly, I'm not aware of any similar facts because when you look at the cases, especially those cited by prime, a vast majority of them either were clearly pure intrastate, stipulated that there was no transportation of property or no intrastate transportation of property. There's a lot of those stipulations. And even where they talk about trips to civic or fixed intent, they just can oftentimes say, well, it doesn't matter under either one. There just wasn't anything. Kind of like talking about the Indiana Supreme Court recent case, the Brown case with Progressive, where the court in that case, contrary to what prime said, the court specifically said, well, yeah, trips to the majority. We have a fixed intent approach. We don't really care which one applies because the parties stipulated there's no intrastate transportation of property. So those cases just aren't very instructive here. Now, as far as any of the other issues that have been raised by prime, as far as going to whether interest applies, I think the briefing itself is pretty clear on that. I'm not sure how prime wants the federal court to reopen a state court judgment that automatically includes interest. Under Indiana law, counsel, let's suppose you've got an insurance policy with a million-dollar limit, and the trial court orders the insurance company to pay a million dollars policy limit. Does Indiana law apply post-judgment interest to such a judgment? Post-judgment interest would apply to the judgment. However, the MCS-90, I do not believe, would be required to pay above the limit of the MCS-90 itself, if that makes sense. I'm not so sure about that, but I'm just wondering about the ‑‑ but such a judgment under an insurance policy would, of course, carry post-judgment interest, right? Correct. Correct.  I think I emphasized that point in my brief, talking about a recent case where people were trying to say, well, post-judgment interest was told during the COVID emergency, and the court even said, no, you can't even do that. It's a creature statute, so it's that paramount that the post-judgment interest attaches automatically to any judgment. So it would really be trying to essentially negate that portion of Indiana law under an Indiana state court judgment, and that's why I think it just doesn't quite hold water. They're really here. We've talked about this statutory language and everything, Your Honor. I think that just gets to the heart of what we're looking at. Yes, there is these issues of place in a state, place in another state, but when you're looking at Section 32's definition, pardon me, 23B's definition, it just seems to be there. Now, as far ‑‑ I don't know how much I want to touch on this, Your Honor. There have been some, frankly, bad allegations against one of my colleagues raised by crime, and I do just want to address those right now. There's cases cited that talk about, well, there's a public policy issue of trying to avoid sham judgments, collusion between parties, and that's why this court should either find the MCX 90 invalid or allow crime to relitigate the state court judgment to reopen it, eventually negating it. Those cases they've cited are an opposite. They're state court cases involving challenges to state court judgments. The state trial court in this case allowed Prime's motion for intervention, correct? Correct. And Prime had the opportunity to appear in that court and challenge the damages calculations and did not appear, correct? That's correct, Your Honor. Okay. There's a very interesting procedural pathway with that case where the way I kind of phrased it at the Court of Appeals is that Prime kind of litigated themselves out of the case. When they defeated coverage under the policy, they also lost their interest in order to defend their being able to step into the shoes. The big death knell in the Indiana State Court by not allowing Prime to set aside the judgment was that their continued hold that, well, we're going to challenge this MCX 90 endorsement even being applicable. And under Indiana law, longstanding, if it's a contingent interest, you can't intervene in your own name. So that was the end result there. And our Supreme Court did end up denying their petition for transfer on that issue. So, Your Honor, even with pure interest state, even if that were the case here, Indiana to Indiana, we still do have from the trip start, we're starting from the yard. Humphrey was clear. He always started from the yard in Illinois. No matter where he went, he ended up back in Illinois. These were coordinated events through his dispatch that were intended to take him out, take him to other states, and bring him back home. They didn't want him bobtailed. They didn't want him deadheading. That's something that he specifically talked about. They wanted to always make sure he had a load to get back home, and that's what this load was. That's what his testimony shows. Frankly, Your Honor, unless you have any other questions, I think that completely fulfills my argument. Thank you, Mr. Sinclair. Thank you. Anything further, Ms. Murphy? If I may briefly, Your Honor. Briefly. Very briefly. We'll try a minute again. Thank you. There's no doubt in my mind that Congress could have written a statute that applied the surety requirements, the financial responsibility requirements to any motor carrier subject to the statute, regardless of whether they were carrying property from a point in one state to a point in another, or regardless of whether they were carrying hazardous matter. Congress knows how to draft that kind of language. It would be easier. It would be simpler. That is not the language Congress drafted, and that is, Your Honor, why we ask this court to hold that the surety provision of the MCS-90 does not apply, because Congress could have chosen language that would have removed the requirement of movement of property from a point in one state to a point in another. I just have a question about precedent. Has any court of appeals, other than the Fifth Circuit, adopted what the parties call the DRIP-specific rule? I kind of agree with my learned friend that, as you read these cases, there's not the clearest of distinctions between the way they were. I'm not asking you. So I would say no. There are myriad district court decisions. I'm just asking about the courts of appeals. Fifth Circuit seems clear. Anybody else? I don't think anybody else has provided a clear rule. Okay. And we are basically asking this court to provide a clear statutorily based rule. Okay. Thank you. Thank you, Your Honor. The case is taken under advisement.